Laura R. LEHMULLER, Plaintiff,

v.

**INCORPORATED VILLAGE OF SAG HARBOR, Defendant.**

No. CV 95–2323(ADS).

United States District Court,
E.D. New York.

Sept. 25, 1997.

Patricia Weiss, Sag Harbor, NY, for Plaintiff.

Jaspan Schlesinger Silverman & Hoffman LLP (Laurel R. Kretzing, of Counsel), Garden City, NY, for Defendants.

SPATT, District Judge.

The plaintiff, Laura R. Lehmuller ("Lehmuller" or the "plaintiff"), instituted this action pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e–2(a)(2), as amended by the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k); the New York State Human Rights Law, N.Y. Exec. Law § 296–a; the Americans With Disabilities Act (the "ADA"), 42 U.S.C. § 12101 *et seq.*; and 42 U.S.C. § 1983 ("Section 1983") in the context of her First Amendment right to petition the government for redress, against the defendants, the Incorporated Village of Sag Harbor (the "Village" or the "defendant"). The plaintiff alleges that the defendants have discriminated

against her because of her gender, her pregnancy, and her physical disability. In addition, Lehmuller claims that the Village took retaliatory action against her in response to her discrimination claim filed with the Equal Employment Opportunity Commission (the "EEOC"), which she contends is her protected right to petition the government for redress of grievances under the First Amendment.

By a Memorandum Decision and Order dated November 11, 1996 (the "Order"), the Court granted in part and denied in part the defendant's motion for summary judgment pursuant to Fed.R.Civ.P. 56 and plaintiff's cross motion for summary judgment. Specifically, the Court granted the defendants' motion for summary judgment, dismissing the plaintiff's claims arising under the ADA and Section 1983. Presently before the Court is the plaintiff's motion for reconsideration, pursuant to Fed.R.Civ.P. 59 and 60, of the Order granting the defendants' motion for summary judgment dismissing the plaintiff's Section 1983 claim, or in the alternative, the plaintiff seeks to certify for appeal pursuant to Fed.R.Civ.P. 54(b), that portion of the Order dismissing her Section 1983 claim.

## I. BACKGROUND

The facts presented below are a summary of those outlined in the Court's prior opinion.

Lehmuller is a resident of New York State and is a female and full-time police officer who has been employed by the defendant since 1988. The Incorporated Village of Sag Harbor is a municipality located in Suffolk County. The Sag Harbor Police Department (the "Police Department") currently consists of ten officers and Chief Joseph J. Ialacci ("Chief Ialacci" or "Ialacci").

Since Chief Ialacci joined the Police Department in 1986, the Department has followed an unwritten policy whereby officers who become disabled due to illness or off-duty injury are required to use their sick leave, holidays, vacation days, or compensatory time for the period that they are unable to perform their normal patrol duties. Officers injured in the line of duty who are unable to conduct their patrol duties, but who can perform routine clerical tasks, are required to report for duty at headquarters as their physical condition permits. This policy purportedly stems from New York General Municipal Law § 207–c that mandates that officers injured in the line of duty receive full pay whether they work or not. According to the defendant, the policy is designed to insure that officers perform whatever work they can in exchange for their continued pay.

When the plaintiff was hired as the first and only female police officer, the Village had no established policy regarding light-duty for pregnant officers. When Lehmuller announced her pregnancy and as a result, requested light-duty, Chief Ialacci referred the matter to the Mayor and Board of Trustees of the Village (the "Board"). Upon consideration of the light-duty policy, the Mayor and the Board decided that the Village would treat pregnancy as it did other non-job related injuries. Therefore, the plaintiff would be required to use her sick leave, holidays, vacation days, or compensatory time for the period that she would be unable to perform her normal patrol duties as a result of her pregnancy.

On October 22, 1993, Lehmuller filed a charge with the EEOC alleging that the Village discriminated against her because of her pregnancy in violation of Title VII, as a result of the denial of her request for light duty work. On April 6, 1995, the EEOC issued to the plaintiff a right-to-sue letter.

The plaintiff continued to perform her usual job responsibilities until November 27, 1993, when she fell and sustained an on-the-job back injury while on patrol. Lehmuller reported the accident and was taken to the Southampton Hospital emergency room where she received limited treatment due to her pregnant condition. Subsequently, Lehmuller's personal orthopedic physician instructed her not to return to work. Lehmuller filed a workers' compensation claim and, on December 6, 1993, the Village prepared an "Employer's Report of Work–Related Accident/Occupational Disease."

On December 15, 1993, Chief Ialacci mailed a certified letter to Lehmuller asking that she submit to an examination by Dr. Reese at Suffolk County Headquarters to

evaluate her back injury. Lehmuller complied with the Chief's request. Dr. Reese concluded, contrary to Lehmuller's personal doctor, that Lehmuller could perform light-duty work. The plaintiff was notified of the decision and subsequently returned to work on or about January 17, 1994. She was assigned to "Headquarters-schedule" light-duty with responsibilities that consisted of taking walk-in window complaints and assisting with clerical work as a result of her on-the-job injury.

Lehmuller continued to work until she gave birth to her son on April 21, 1994 and used her holiday, sick, vacation, and personal time to remain at home until September 15, 1994 when she returned to work.

Lehmuller filed this lawsuit alleging that the Village discriminated against her because of her pregnancy in violation of both Title VII and the Pregnancy Discrimination Act. In addition, the plaintiff claims discrimination because of her back-injury disability in violation of the ADA. Finally, the plaintiff maintains that the defendant deprived her of her federal right to free speech based on the alleged retaliation against her for filing the EEOC claim. Specifically, Lehmuller contends that the Village unlawfully required a second examination of her back injury that resulted in her return to work contrary to her own doctor's advice. Further, Lehmuller asserts that her EEOC claim is a protected right to petition the government for redress under the First Amendment and, therefore, the Village's alleged retaliatory actions violated her constitutional right.

## II. DISCUSSION

A. *Standard of review for Rule 6.3 motions*

Local Civil Rule 6.3 (formerly Local Rule 3(j)) provides in relevant part:

> A notice of motion for reconsideration or reargument shall be served within ten (10) days after the docketing of the court's determination of the original motion. There shall be served with the notice of motion a memorandum setting forth concisely the matters or controlling decisions which counsel believes the court has overlooked.... No oral argument shall be heard unless the court directs that the matter shall be reargued orally. No affidavits shall be filed by any party unless directed by the court.

As the Second Circuit recently decided, a motion for reconsideration or reargument "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked— matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir.1995); *see also University of Cal. Press v. G.A. Ins. Co. of New York,* No. CV–94–4950, 1996 WL 497143, at *2 (E.D.N.Y. Aug. 26, 1996), *aff'd,* 116 F.3d 466 (2d Cir.1997); *Central Tools, Inc. v. Fred V. Fowler Co. Inc.,* No. 95 CV 2119, 1995 WL 783183, at *1 (E.D.N.Y. Dec. 22, 1995).

A Local Rule 6.3 motion may not advance new facts, issues, or arguments not previously presented to the court. *Walsh v. McGee,* 918 F.Supp. 107, 110 (S.D.N.Y.1996); *Walpex Trading Co. v. Yacimientos Petroliferos Fiscales Bolivanos,* No. 84 CIV. 4364, 1989 WL 67239, at *1 (S.D.N.Y. June 13, 1989). Local Rule 6.3 is to be narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been fully considered by the court. *Walsh,* 918 F.Supp. at 110; *ACB Mercantile, Inc. v. Houbigant, Inc. (In re Houbigant, Inc.),* 914 F.Supp. 997, 1001 (S.D.N.Y.1996). Lastly, courts have reiterated that a Rule 6.3 motion is not a motion to reargue those issues already considered when a party does not like the way the original motion was resolved. *Walsh,* 918 F.Supp. at 110; *Houbigant,* 914 F.Supp. at 1001.

Upon receipt of a notice for reargument pursuant to Local Civil Rule 6.3, the Court has the following options. First, the Court can simply deny the motion, thereby leaving the original decision unaltered. *See University of Cal. Press,* 1996 WL 497143, at *5 (denying defendant's motion to reconsider); *Walsh,* 918 F.Supp. at 110 (denying plaintiffs' motion to reargue motion to dismiss for lack of subject matter jurisdiction). Alternatively, the Court can grant a motion

to reargue for the limited purposes of considering the effect of an overlooked matter. *See Brignoli v. Balch Hardy & Scheinman, Inc.*, 735 F.Supp. 100, 101 (S.D.N.Y.1990) (motion to reargue is granted for the limited purpose of considering the effect of a subsequently rendered decision). After such consideration, the Court can affirm and/or clarify its original decision. *See Violette v. Armonk Associates, L.P.*, 823 F.Supp. 224, 226–27 (S.D.N.Y.1993) (motion to reargue is granted and, upon reargument, plaintiffs' motion for summary judgment is again denied).

Finally, having granted a motion to reargue, the Court may vacate the original order, decision or judgment. *See Morin v. Trupin*, 823 F.Supp. 201, 203 (S.D.N.Y.1993) (motion to reargue granted and, upon reconsideration, motion to dismiss is granted); *The Travelers Ins. Co. v. Buffalo Reinsurance Co.*, 739 F.Supp. 209, 211–13 (S.D.N.Y.1990) (plaintiff's motion for reargument is granted and, upon reconsideration, judgment granting defendants' motion for summary judgment is vacated).

B. *Lehmuller's motion*

The plaintiff bases her motion for reconsideration of dismissal of her Section 1983 claim on the following two grounds: (1) the plaintiff's complaint to the EEOC was a matter of public concern because her complaint stemmed from police department employment policy; and (2) the plaintiff's right-to-petition under the Petition Clause of the First Amendment affords her rights which are distinct from, and broader than, those afforded under the Free Speech Clause of the First Amendment.

1. *Speech of public concern*

█ An individual does not give up his First Amendment rights to freedom of speech by virtue of public employment. *Connick v. Myers*, 461 U.S. 138, 140, 103 S.Ct. 1684, 1686, 75 L.Ed.2d 708 (1983). When a dispute arises relating to the First Amendment rights of a public employee, the courts must balance the employee's rights "as a citizen, in commenting upon matters of public concern and the interest of the State,

as an employer, in promoting the efficiency of the public services it performs through its employees." *Id.* (citing *Pickering v. Board of Education of Tp. High School. Dist. 205, Will Cty., Ill.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734–35, 20 L.Ed.2d 811 (1968)); *see also Waters v. Churchill*, 511 U.S. 661, 114 S.Ct. 1878, 128 L.Ed.2d 686 (1994).

█ The initial consideration for a court is to determine whether the employee was "speaking" on matters of public concern. "Whether an employee's speech addresses a matter of public concern must be determined by the content, form and context of a given statement, as revealed by the whole record." *Connick*, 461 U.S. at 147–48, 103 S.Ct. at 1690. The statement at issue will "not be considered in a vacuum; the manner, time, and place of the employee's expression are relevant, as is the context in which the dispute arose." *Rankin v. McPherson*, 483 U.S. 378, 388, 107 S.Ct. 2891, 2899, 97 L.Ed.2d 315 (1987); *see also Connick*, 461 U.S. at 153, 103 S.Ct. at 1693. As the Second Circuit observed, the Supreme Court has declined to establish a general standard against which such statements may be judged, recognizing that there is a great variety of fact situations in which disputes regarding allegedly protected speech may arise. *Blum v. Schlegel*, 18 F.3d 1005 (2d Cir.1994).

The Supreme Court has stated that not every matter that transpires in a government office or pertains to the functioning of a public agency is a matter of "public concern." *Connick*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708. In *Connick*, the Court remarked:

"To presume that all matters which transpire within a government office are of public concern would mean that virtually every remark—and certainly every criticism directed at a public official—would plant the seed of a constitutional case."

*Id.* at 149, 103 S.Ct. at 1691. The Second Circuit commented that a matter is one of public concern when the speaker's interest in it arises from the speaker's status as a public citizen, as opposed to his or her status as a public employee. *Blum*, 18 F.3d at 1012.

■ Once the plaintiff has established that he or she has spoken on a matter of public concern, the plaintiff must also establish that the speech was at least a "substantial" or "motivating" factor in the discharge. *White Plains Towing Corp. v. Patterson*, 991 F.2d 1049, 1058 (2d Cir.), *cert. denied*, 510 U.S. 865, 114 S.Ct. 185, 126 L.Ed.2d 144 (1993) (citing *Mt. Healthy City School District Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977)). If the plaintiff fails to demonstrate either the public concern element or this causation element, the First Amendment claim must be dismissed. *Id.* at 1058–59.

■ Once both elements have been illustrated, a Court must then balance the interests of the employer. An employer may escape liability in either of two ways. First, "the employer is entitled to prevail if it demonstrates that it would have made the same employment decision in the absence of the protected conduct." *Id.* at 1059. Second, "even if the employer does not establish that it would have discharged the employee in the absence of the protected conduct, it may nonetheless prevail if it can show that the employee's conduct interfered with the employer's 'effective and efficient fulfillment of its responsibilities to the public.'" *Id.* (quoting *Connick*, 461 U.S. at 150, 103 S.Ct. at 1692.).

> [T]he State's burden in justifying a particular discharge varies depending upon the nature of the employee's expression, ..., and the court must thus perform a balancing analysis, measuring, *inter alia*, the extent to which the employee's speech touched upon matters of public concern against the extent to which the employee's conduct interfered with the functioning of the workplace. Even as to an issue that could arguably be viewed as a matter of public concern, if the employee has raised the issue solely in order to further his own employment interest, his First Amendment right to comment on that issue is entitled to little weight in the balancing analysis.

*Id.* (citation omitted).

■ In granting summary judgment dismissing the plaintiff's Section 1983 claim of violation of the First Amendment, the Court held that Lehmuller's EEOC charge was personal in nature and related solely to her employment situation. Order at 24. Hence, the Court concluded that her speech was not of "public concern." Upon reconsideration of the Order, the Court finds that Lehmuller's speech does touch upon a matter of "public concern." In reaching this conclusion, the Court finds *White Plains Towing* instructive.

In *White Plains Towing*, the plaintiffs, White Plains Towing Corp. and Don Cherico ("Cherico"), were assigned the exclusive right to towing referrals in a certain area by Troop K of the New York State Police. The plaintiffs had made repeated oral and written demands to the defendants for a larger share of towing assignments. In addition, the plaintiffs lodged a formal complaint with the State Police against two police officers, alleging that these defendants had impugned Cherico's reputation by stating that he was a " 'thief', 'no good' and associated with organized crime ... [P]laintiffs' complaint resulted in a formal State Police investigation; ... thereafter, Mr. Cherico withdrew his complaint." *White Plains Towing*, 991 F.2d at 1053.

Subsequently, the plaintiffs' towing assignment was terminated. The plaintiffs filed complaints with the State Police and the Office of the Governor to gain reassignment but to no avail. The plaintiffs then commenced an action pursuant to Section 1983 maintaining that the termination deprived them of their First Amendment rights "to free speech and to petition the governmental authorities for the redress of grievances." *Id.* at 1054.

The Second Circuit held that the vast majority of the plaintiff's complaints consisted of demands seeking an increase in towing referrals. However, the Second Circuit held that the personnel complaint against the two police officers for allegedly impugning his reputation may be a matter of public concern, "for a state police corps' performance of its duties is a matter of public concern, and alleged defamation by state police officers of a citizen with whom the police department is doing business may well be a matter of interest to the community." *Id.* at 1060. Howev-

er, the district court did not balance the interests of the State Police against the plaintiffs' First Amendment rights. Reviewing the evidence, the Second Circuit held that the defendants would have terminated the assignment to Cherico even had there been no personnel complaint. *Id.* at 1061. Accordingly, the Second Circuit reversed and held that no First Amendment right had been violated.

In the present case, the defendants suggest that the speech claimed by Lehmuller to be protected is in fact unprotected because it relates to what is essentially a private employment dispute. On the other hand, Lehmuller contends that the: (1) direct order to return to work prematurely; (2) the reassignment into headquarters full-time without her teaching assignments at D.A.R.E.; and (3) the Village's violations of the N.Y. Gen. Mun. Law § 207–c (which mandates that police officers injured in the line of duty receive full pay whether they work or not) all constitute retaliation for the filing of the EEOC complaint. Applying the standard set forth above, the Court cannot say that Lehmuller's EEOC complaint did not at least minimally touch upon a matter of public concern. The Court finds that an allegation that the Village discriminated against the plaintiff because of her pregnancy by the denial of her request for light duty work, may well be a matter of interest to the community. The Court finds relevant the fact that the plaintiff was the first female police officer ever hired by the Village and that it was the first time that the Village had ever confronted a request like the plaintiff's to be placed on "light duty" status due to her pregnancy. Lehmuller's EEOC complaint implicates the Police Department's employment policy toward pregnant police officers which involves at least, minimally, a matter of "public concern." *See Saulpaugh v. Monroe Community Hosp.,* 4 F.3d 134, 143 (2d Cir.1993), *cert. denied,* 510 U.S. 1164, 114 S.Ct. 1189, 127 L.Ed.2d 539 (1994).

. However, the Court must not only examine the content of the speech, but the context and form of the speech. See *Rankin,* 483 U.S. at 388, 107 S.Ct. at 2899; *Connick,* 461 U.S. at 153, 103 S.Ct. at 1693. Lehmuller's

EEOC complaint was brought in the context of a private employment. dispute and to further her own employment interest. As such, Lehmuller's First Amendment interest is weakened by the context of her speech. *See White Plains Towing,* 991 F.2d at 1060 ("... Cherico's First Amendment interest in filing his short-lived personnel complaint would be weak if, as the trial record strongly suggests, he took that action solely to obtain additional referrals").

■ The Court's inquiry does not conclude here. Lehmuller must also demonstrate that the filing of the EEOC complaint was at least a "substantial" or "motivating" factor in the Village's decision to direct her to return to work. The Village maintains that the physical examination was statutorily authorized by N.Y. Gen. Mun. Law § 207–c and that the assignment of headquarters duty was medically justified. However, the Village's physician, Dr. Reese, evaluated Lehmuller's injuries and determined that she could return to work to perform a light duty assignment when she felt that she was "capable." Lehmuller contends that notwithstanding the fact that she did not feel "capable" of accepting a light duty assignment, Chief Ialacci directed her to return to work. Although the physical examination may have been statutorily authorized, given the evidence submitted in support and opposition to motion and cross motions for summary judgment, the Court is unable to conclude whether Lehmuller's filing of the EEOC complaint was a "substantial" or "motivating" factor in the Village's decision to order her back to work, to reassign her into headquarters full-time, or to violate N.Y. Gen. Mun. Law § 207–c, which mandates that police officers injured in the line of duty receive full pay whether they work or not.

The Village does not harmonize Dr. Reese's prognosis that Lehmuller return to work when she felt "capable" with the Police Chief's letter directing Lehmuller to report for work on a light duty status. Therefore, the Court is unable to discern whether the Village would have made the same employment decision in the absence of the EEOC complaint. In addition, the Village has submitted no evidence that Lenmuller's conduct

interfered with its "effective and efficient fulfillment or its responsibilities to the public."

Accordingly, after reviewing the parties' arguments, the Court grants the plaintiff's motion for reconsideration on the basis of whether Lehmuller's speech was on a matter of public concern. Upon reconsideration of this issue, the Court finds that the plaintiff has established material issues of fact as to whether the plaintiff's speech was a matter of "public concern," and as to the Village's motive in directing the plaintiff to return to work after her injury. As a result, the Court vacates its Order only as to that portion granting summary judgment in favor of the Village and dismissing Lehmuller's Section 1983 claim and the Court denies the defendant's motion and the plaintiff's cross motion for summary judgment.

### 2. *Petition Clause under the First Amendment*

The Second Circuit in *White Plains Towing* held that First Amendment right-to-petition claims are governed by the same interest balancing principles as First Amendment freedom of speech claims. *White Plains Towing*, 991 F.2d at 1059. The plaintiff contends that her right-to-petition under the First Amendment affords her rights which are distinct from, and broader than, those afforded under the Free Speech Clause of the First Amendment. The Court expressly rejected this contention in its previous Order. *See* Order at 22–23. Because Lehmuller does not point to controlling decisions or data that the Court overlooked which might reasonably be expected to alter the conclusion reached by the Court, see *Shrader*, 70 F.3d at 257, the Court denies the plaintiff's motion for reconsideration of this issue.

### C. *Certification to the Second Circuit*

 ▮ Lehmuller requests that the Court certify her Section 1983 claim to the Second Circuit. 28 U.S.C. § Section 1292(b) provides:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a control-

ling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

The Second Circuit has stated that certification is not proper when there are issues of fact to be tried. See *Harriscom Svenska AB v. Harris Corp.*, 947 F.2d 627 (2d Cir.1991). The Court has determined that triable issues of fact exist. The appropriate time for taking an appeal in a routine case such as this is the usual time following entry of judgment. Hence, the Court denies the plaintiff's motion to certify the issues presented by her Section 1983 speech cause of action.

### III. CONCLUSION

After reviewing the parties' submissions and for the reasons set forth above, it is hereby

**ORDERED,** that the plaintiff Laura R. Lehmuller's motion for reconsideration is granted, in part, with respect to the plaintiff's claim pursuant to 42 U.S.C. § 1983 for an alleged violation of her First Amendment rights, and upon reconsideration, the Court vacates its original decision granting the defendant's motion for summary judgement pursuant to Fed.R.Civ.P. 56; and denies the defendant's motion and the plaintiff's cross motion for summary judgement as to the Section 1983 speech cause of action. The motion for reconsideration is denied in all other respects; it is further

**ORDERED,** that the plaintiff Laura R. Lehmuller's motion to certify the issues presented by her Section 1983 speech cause of action, is denied;

**ORDERED,** that the parties are directed to appear for a pre-trial conference on Tuesday, October 21, 1997 at 9 A.M.; and it is further

**ORDERED,** that the parties are directed to appear to select a jury for this action on Monday, October 27, 1997 at 9 A.M. in Courtroom A.

**SO ORDERED.**